UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

v.                                                       Case No. 6:19-cr-222-Orl-37LRH

MISAEL RODRIGUEZ-SANCHEZ,

_____

## ORDER

On September 30, 2019 U.S. Magistrate Judge Embry J. Kidd ordered Defendant Misael Rodriguez-Sanchez released from federal custody pending trial, pursuant to 18 U.S.C. § 3145(a). (Doc. 10 ("**Order**").) Upon the Government's motion, Magistrate Judge Kidd stayed Defendant's release while the Order was appealed. (Docs. 11, 15.) The Government then moved for revocation of the Order (Doc. 22 ("**Motion**")) and Defendant responded (Doc. 36). The Court held a hearing on the Motion on October 28, 2019 (Doc. 50 ("**Hearing**")), where it orally denied the Motion. This memorializes that ruling.

## I.   BACKGROUND

Defendant was born in Guerrero, Mexico in 1973. (Doc. 21, p. 1.) He is a citizen of Mexico. (Doc. 22, p. 2.) While the circumstances of his immigration to the United States are unclear, he was first charged with operating a motor vehicle without a license in the United States in 2000. (*Id.* at 3.) Then followed a series of criminal charges, with allegations ranging from minor traffic violations to resisting an officer with violence, culminating in two charges of domestic violence that occurred about a month apart in

2010. (*Id.* at 3–4; *see also* Doc. 50.) Ultimately, however, Defendant was convicted only of the second domestic violence incident, where he plead guilty to a misdemeanor. (Doc. 22, pp. 4–5; Doc. 50.) Shortly thereafter, while being held at the Orange County Jail for failure to appear, Immigration and Customs Enforcement ("**ICE**") officers took him into custody and removed him to Mexico on May 5, 2011. (Doc. 22, p. 5; Doc. 19, p. 17.)

At some point, Defendant re-entered the United States. (Doc. 22, p. 2.) Before his most recent arrest for illegal re-entry, Defendant worked in concrete construction. (Doc. 19, p. 9:8–12.) He has been married to his wife for 30 years, but they have been separated the past 11 years. (Doc. 21, p. 1.) He has three adult children; he lives with his son and daughter-in-law ("**North Main House**") and maintains daily contact with his other two children, all of whom reside in Apopka, Florida. (*Id.*) He co-owns the North Main House with his wife. (Doc. 50; *see also* Doc. 19, 12:2–4, 23:17–24.) Defendant's daughter, Josephina Rodriguez, is willing to be a third-party custodian for her father. (Doc. 19, p. 44:3–15.) If released from custody, Defendant would reside at her address in Apopka. (Doc. 50.)

## II.    LEGAL STANDARD

Upon request, a district court will promptly review a pretrial release order issued by a magistrate judge. 18 U.S.C. § 3145(a) (2018); *U.S. v. Fuentes-Flores*, No. 2:14-cr-66-FtM-38CM, 2014 WL 3908168, at *2 (M.D. Fla. Aug. 11, 2014). That review is *de novo. Fuentes-Flores*, 2014 WL 3908168, at *2; *U.S. v. Hurtado*, 779 F.2d 1467, 1481 (11th Cir. 1985). "Review by the district court contemplates an 'independent consideration of all facts properly before it.'" *U.S. v. Megahed*, 519 F. Supp. 2d 1236, 1241 (M.D. Fla. 2007) (quoting

*U.S. v. Gaviria*, 828 F.2d 667, 670 (11th Cir. 1987)). The district court may undertake a careful review of the parties' papers and the evidence presented at the detention hearing or, if necessary, the Court "may marshal further evidence by convening a hearing." *Id.* at 1241-42 (citation omitted). Here, the Court conducted a *de novo* review of the papers filed by the parties and the transcript of the hearing held before Magistrate Judge Kidd and held a hearing of its own. (Docs. 7, 22, 36, 50.) Upon this record, the Court denies the Motion.

### III. ANALYSIS

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *U.S. v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act, which governs if and how a defendant is to be released pretrial, presumes release is appropriate "absent a demonstration that the defendant is likely to flee or is a danger to the community." *U.S. v. Espinoza-Ochoa*, 371 F. Supp. 3d 1018, 1020 (M.D. Ala. 2019); *see also* 18 U.S.C. § 3142(b) ("The judicial officer shall order the pretrial release of the person . . . unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community."). Detention is only appropriate when the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . ." 18 U.S.C. § 3142(e).

The Government bears the burden of establishing, by a preponderance of the evidence, Defendant is a serious flight risk. *See U.S. v. King*, 849 F.2d 485, 489 (11th Cir.

1988); *U.S. v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985); *U.S. v. Al-Arian*, 280 F. Supp. 2d 1345, 1347 (M.D. Fla. 2003). The burden on the Government is even higher if it seeks to detain Defendant because he is a risk to another person or to the community. The Government must show by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(f); *see also Medina*, 775 F.2d at 1402; *Al-Adrian*, 280 F.Supp.2d at 1347.

The Bail Reform Act enumerates four factors for the Court to consider when determining whether conditions of release can reasonably assure the appearance of the defendant and secure the safety of the community:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law, and
>
> (4) the nature and seriousness of the danger to any person or

the community that would be posed by the person's release. In considering the conditions of release . . . the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use of collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g). Having conducted a *de novo* review of the evidence, the Court finds the Government has failed to show by the preponderance of the evidence that Defendant's risk of flight or non-appearance cannot be overcome by conditions of release under 18 U.S.C. § 3142. The Government has also failed to show by clear and convincing evidence that the Defendant poses a present danger to persons or to the community.

## A.    Pre-Trial Services Questions

At the Hearing, and to a lesser extent in its Motion, the Government argues that Defendant's refusal to answer some of pretrial service's questions (on advice of counsel) is itself strong evidence Defendant is a flight risk. (*See* Doc. 50; Doc. 22, pp. 6–7.) This argument is problematic for several reasons. A reticent defendant does not absolve the Government of its evidentiary burden in pretrial release cases where there is no presumption. The burden is, and remains, on the Government to prove, by a preponderance of the evidence or by clear and convincing evidence, that the Defendant is a flight risk or a danger to the community, respectively. *See, e.g.*, *Medina*, 775 F.2d at 1402. Here, the Government failed to meet its burden.

The Government argues Defendant should be detained because he refused to

answer pretrial services questions at his own peril and Magistrate Judge Kidd failed to take adequate notice of Defendant's silence. (Doc. 50.) When pushed, the Government claimed that Defendant should be detained because years of experience showed that where people refuse to answer questions, they get detained. (*Id.*) The Court, in its years of experience, disagrees. It is true enough that in many instances the information provided by defendants in response to questions from pretrial services may operate to rebut evidence offered by the government to establish risk of flight or dangerousness. It is equally true that in many instances defense counsel will provide information from other sources such as family members, employers and the like to rebut evidence from the government supporting detention. But the failure of a defendant to answer questions which might implicate him or her in the commission of the offense cannot give rise to a negative inference on the issue of detention. In other words, the absence of information from the Defendant cannot, in and of itself, make the government's case for detention. Defendants may, and often do, answer pretrial services' questions—and in many instances, information helpful to the defendants can be gleaned from these answers. But under no circumstance is the Defendant obliged to answer these questions or refuse to do so "at his own peril." (*See* Doc. 50.) It is the Government's job, and its job alone, to show there is no condition or set of conditions that can reasonably assure the appearance of the defendant and the safety of the community. *See* 18 U.S.C. § 3142(e); *see also Espinoza-Ochoa*, 371 F.Supp.3d at 1020. It is not the defendant's burden to prove he is not a flight risk, at least absent a statutory presumption. *See, e.g., Medina*, 775 F.2d at 1402. The Court

will not consider Defendant's refusal to answer pretrial questions as evidence that weighs against a finding of release.

### B. Bail Reform Act and ICE Detainer

The Court turns now to the Bail Reform Act factors and the interaction between the Bail Reform Act and the existence of an ICE detainer. (*See* Doc. 22, p. 1.) First, the existence of an immigration detainer does not presumptively establish the propriety of pretrial detention. *See Espinoza-Ochoa*, 371 F. Supp. 3d at 1022; *U.S. v. Garcia-Chagala*, No. 2:17-cr-133-FtM-38MRM, 2017 WL 6535198, at *2 (M.D. Fla. Dec. 21, 2017). Congress could have but did not create a rebuttable presumption that removable aliens should be detained, indicating that in some instances at least, pretrial release is appropriate. *Espinoza-Ochoa*, 371 F. Supp. 3d at 1022 (citing *U.S. v. Ailon-Ailon*, 875 F.3d 1334, 1338 (10th Cir. 2017). And while a detainer can be a factor in a court's analysis, as it can provide an incentive for a defendant to flee should pretrial release be granted, *Garcia-Chagala*, 2017 WL 6535198, at *2, the possibility of deportation *by ICE* upon release does not impact the 18 U.S.C. § 3142(g) analysis.

Federal law enforcement has two options when it finds an individual present in the United States without authorization after a previous deportation: seek immediate removal or pursue criminal prosecution. *Garcia-Chagala*, 2017 WL 6535198, at *2 (citing 8 U.S.C. §§ 1326(a), 1227(a)(1)(B)). But if the Government chooses prosecution, the individual may not be removed from the country until the criminal case has resolved and the defendant has been "fully released for a crime with which he is charged." *Id.* (citing

*Themeus v. U.S. Dep't of Justice*, 643 F. App'x 830, 833 (11th Cir. 2016)). And if the Government does remove the defendant, then the criminal indictment may be subject to dismissal, as simultaneously deporting and criminally prosecuting an individual implicates his Fifth and Sixth Amendment rights. *U.S. v. Resendiz-Guevara*, 145 F. Supp. 3d 1128, 1139 (M.D. Fla. 2015). Further, courts have held the risk of non-appearance by a defendant "must involve an element of volition." *Espinoza-Ochoa*, 371 F. Supp. 3d at 1022 (quoting *U.S. v. Santos-Flores*, 794 F.3d 1088, 1092 (9th Cir. 2015); *see also Ailon-Ailon*, 875 F.3d at 1339 (The Bail Reform Act "is concerned with 'the risk that the defendant may flee or abscond, that is, that he would fail to appear by virtue of his own volition, actions and will.'" (quoting *U.S. v. Montoya-Vasquez*, No. 4:08CR3174, 2009 WL 103596, at *5 (D. Neb. Jan. 13, 2009))). It is the Government's choice whether to prosecute or immediately seek removal of the defendant, but the possibility of involuntary removal is not a factor when determining pretrial detention. *See Ailon-Ailon*, 875 F.3d at 1339 ("[T]o the extent any conflict exists, it is a matter for the Executive Branch to resolve internally.")

### C. 18 U.S.C. § 3142(g) Factors

Having reviewed, *de novo*, the factors enumerated in 18 U.S.C. § 3142(g) against the proper record evidence, while close, on balance there are conditions that will assure Defendant's appearance at trial and the safety of the community.

First, the nature and the circumstances of the offense charged weigh in favor of pretrial release. Defendant is charged with illegal reentry into the United States in violation of 8 U.S.C. § 1326(a). (Doc. 37.) This is not a crime of violence, a violation of

section 1591, or a Federal crime of terrorism, and it does not involve a minor victim, or a controlled substance, firearm, explosive, or destructive device. *See* 18 U.S.C. § 3142(g). The second factor weighs against Defendant's pretrial release—the weight of the evidence against the Defendant is great. (*See* Doc. 22, p. 9.)

The third factor, the history and characteristics of Defendant, favors his pretrial release. The Defendant has been a resident, albeit an unlawful one, for some number of years prior to his arrest. (*See* Doc. 21, p. 2.) And he has been working locally as a concrete finisher, also illegally, with no allegations of criminal conduct apart from this offense in over nine years. (*See id*.) He has significant ties to the community. His three children all live in Apopka and he contacts them daily. (*Id*. at p. 1.) He co-owns a house with a significant amount of equity jointly with his wife in Apopka, where his son and daughter-in-law live. (Doc. 19, pp. 23–24; Doc. 50.) The conditions of release, in conjunction with these ties, provide a strong incentive for Defendant to appear. Defendant will be required to execute an unsecured bond binding him to pay the United States $25,000, with his daughter Josephina Rodriguez as a co-signer. (Doc. 10, p. 3; Doc. 19, p. 47.) As Magistrate Judge Kidd explained to Defendant, an unsecured bond means that if he fails to appear or surrender as directed the United States may pursue any assets he has, including his house. (Doc. 19, p. 47.) In addition to co-signing his loan, his daughter has agreed to serve as a third-party custodian. (*Id*. at pp. 47–48.) She has agreed to supervise Defendant in accordance with the conditions of his release, to use every effort to assure his appearance at all scheduled court proceedings, and to notify the Court immediately if Defendant

violates any condition of release or disappears. (*Id.* at p. 48.) These conditions, along with Defendant's ties, provide compelling reasons to appear.

Finally, while Defendant's criminal history is troubling, especially with respect to the arrests for domestic violence, the Government has not met its burden to show Defendant poses a danger to any person or the community by clear and convincing evidence. *See* 18 U.S.C. § 3142(f); *Medina*, 775 F.2d at 1402. Without diminishing the seriousness of domestic violence charges, these charges, which occurred nearly a decade ago, are too remote to establish Defendant is a danger today. (*See* Doc. 21, pp. 2–3.) These two charges and single misdemeanor conviction from nearly a decade ago simply do not rise to the level of "clear and convincing evidence" that Defendant poses a danger to the community.

Reviewing the Order, the Court finds the conditions of release set by Magistrate Judge Kidd are sufficient when supplemented with a location monitoring requirement. Together, the Court finds these conditions will reasonably assure the appearance of Defendant as required and the safety of any other person and the community. *See* 18 U.S.C. § 3142(e).

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. U.S. Magistrate Judge Embry J. Kidd's Order Setting Conditions of Release for Defendant Misael Rodriguez-Sanchez (Doc. 10) is **AFFIRMED.**

2. The Court **REIMPOSES** all Conditions of Release contained in Magistrate

Judge Kidd's Order (Doc. 10).

3. The Court further **IMPOSES** location monitoring of Defendant Misael Rodriguez-Sanchez as a condition of his release. It is at the discretion of Pretrial Services whether electronic monitoring equipment will be used.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on November 5, 2019.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record